UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHERYL LODY-NILES, o/b/o MITCHELL J. LODY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 06 C 4993 ) |
| MICHAEL ASTRUE,[1] COMMISSIONER OF SOCIAL SECURITY, | ) Judge Nan R. Nolan ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cheryl Lody-Niles ("Plaintiff"), on behalf of her son, Mitchell J. Lody ("Mitchell"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Child's Insurance Benefits ("CIB") under Title II of the Social Security Act (the "Act"). 42 U.S.C. §§ 416(e), 423(d). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and have filed cross-motions for summary judgment. For the reasons set forth here, the Commissioner's motion is granted and Plaintiff's motion is denied.

## BACKGROUND

The history of this case is set forth in detail in *Lody-Rhodes ex. rel. Lody v. Barnhart*, 343 F. Supp. 2d 660 (N.D. Ill. 2004) (Schenkier, M.J.) The court assumes the reader's familiarity with this earlier opinion, but finds it useful to repeat the relevant background here.

---

[1] On February 12, 2007, Michael Astrue became Commissioner of Social Security, replacing Acting Commissioner Linda S. McMahon (January 20 to February 11, 2007), and Commissioner Jo Anne B. Barnhart. Astrue is substituted for his predecessor pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

### A. Plaintiff's Claim for CIB

Mitchell was born on May 9, 1996 to Plaintiff and her then-husband, Marvin Ginsberg. (R. 20, 52.) Sometime thereafter, Plaintiff and Mr. Ginsberg divorced, and on December 6, 1997, Plaintiff married Shaine Rhodes. Plaintiff and Mitchell both began living with Mr. Rhodes at that time. On May 4, 1998, the couple had a daughter named Brailyn Rhodes. (R. 20.) Less than two years later on November 14, 1999, Shaine Rhodes committed suicide and died. (R. 20, 52.)

On November 24, 1999, Plaintiff filed a claim for CIB on behalf of Mitchell and Brailyn. The Social Security Act provides that surviving children's benefits may be paid to a child of an individual who dies while fully or currently insured, if the child (1) applies; (2) is under the age of eighteen; (3) is unmarried; and (4) is dependent on the individual who dies. 42 U.S.C. § 402(d)(1)(A)-(C); 20 C.F.R. § 404.350. There is no dispute here as to the benefits available to Brailyn, Mr. Rhodes's natural daughter. Instead, this case focuses on benefits available to Mr. Rhodes's stepchild, Mitchell. The parties agree that Mitchell satisfies the first three eligibility requirements, but disagree as to whether he was "dependent" on Mr. Rhodes.

When the child applying for benefits is a stepchild, the dependency requirement is satisfied by showing that the stepchild was receiving at least one-half of his support from the deceased wage earner, and that he was the stepchild for at least nine months prior to the stepparent's death. 42 U.S.C. § 402(d)(4); 20 C.F.R. §§ 404.363, 404.357. When Plaintiff filed her initial application for CIB, she claimed that her total income for the preceding 12 months consisted of Mr. Rhodes's income ($26,884.36), and child support payments from Mr. Ginsberg ($4,496.40). (R. 27.) The Social Security Administration ("SSA") determined that by aggregating or "pooling" the two income sources ($26,884.36 + $4,496.40 = $31,380.76), the cost of each family member's support was $7,845.19 ($31,380.76 ÷ 4 family members). (R. 35.) The SSA found that the cost of one-half of Mitchell's support was $3,922.59 ($7,845.19 ÷ 2), and that Mitchell thus received more than one-half of his support from his biological father, Mr. Ginsberg ($4,496.40 > $3,922.59). (*Id.*) Having

2

concluded that Mitchell did not receive one-half of his support from Mr. Rhodes, the SSA denied Plaintiff's application for CIB on Mitchell's behalf. (*Id.*)

### B. Plaintiff's Request for Reconsideration

On March 2, 2000, Plaintiff filed a request for reconsideration. As part of her request, Plaintiff stated that the family had additional income of $19,600, consisting of loans that Plaintiff received from her father in 1999, prior to Mr. Rhodes's death, which the family used to help pay their expenses. (R. 52-53.) In a decision dated April 14, 2001, the SSA accepted that the loan constituted additional income, and determined that the family's total income was $50,980.76 ($26,884.36 from Mr. Rhodes's income + $19,600 in loans + $4,496.40 in child support). (R. 90-91.) The cost of each family's support was thus $12,745.19 ($50,980.76 ÷ 4 family members). To determine Mr. Rhodes's contribution to Mitchell's support, the SSA first subtracted the cost of Mr. Rhodes's own support from his income. This reflected the assumption that all of Mr. Rhodes's support came from his income alone, and that he did not share in the "pooled" family income. By this calculation, the SSA determined that Mr. Rhodes had $14,139.17 available to support the remaining three family members after supporting himself ($26,884.36 - $12,884.36 = $14,139.17). (R. 91.) Thus, Mr. Rhodes contributed $4,713.05 to each family member ($14,139.17 ÷ 3). The SSA then found that one-half of Mitchell's support was $6,372.59 ($12,745.19 ÷ 2), and that Mr. Rhodes was not paying that one-half amount ($4,713.05 < $6,372.59). The SSA affirmed the initial determination denying Mitchell CIB. (*Id.*)

### C. Findings of the ALJ and Appeals Council

Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") and waived her son's right to an oral hearing and legal representation. (R. 15-19, 44-45.) On November 29, 2001, the ALJ denied the request for benefits, relying heavily on the reconsideration determination. In the ALJ's view, "assuming that half of the wage earner's income was reserved for his own support, the Administration prorated the remainder and again concluded that the wage earner had been

3

providing less than half of the child's support." (R. 13.) The ALJ agreed that it "appears appropriate" to include the loans from Plaintiff's father as income, but observed that this "serves not only to reduce the percentage of the natural father's support but also that of the deceased wage earner." (R. 14.) The ALJ concluded that the record did not establish that Mr. Rhodes "was providing support to [Mitchell] that would approach the amount he was receiving from his biological father," and thus did not demonstrate that Mr. Rhodes provided at least one-half of Mitchell's support. (*Id.*)

On review, the Appeals Council found that the ALJ had erred in stating that the cost of Mr. Rhodes's support (i.e., $12,745.19) was one-half of his income. (R. 4.) Nevertheless, the Appeals Council agreed with the SSA's reconsideration calculation; that is, after Mr. Rhodes supported himself ($26,884.36 - $12,745.19 = $14,139.17), he contributed $4,713.05 to the three other family members ($14,139.17 ÷ 3). The Appeals Council concluded that because $4,713.05 was less than the $6,372.59 cost of one-half of Mitchell's support ($12,745.19 ÷ 2 = $6,372.59), Mr. Rhodes was not contributing at least one-half of Mitchell's support. (*Id.*)

### D.     The District Court's Remand

Plaintiff filed a complaint in federal court seeking judicial review of the Commissioner's decision. On August 26, 2006, Magistrate Judge Sidney Schenkier reversed and remanded the case for further consideration. *Lody-Rhodes*, 343 F. Supp. 2d at 670. (*See also* R. 113-29.) The court noted that the Commissioner had employed the "pooled-fund method" for calculating the dependency requirement as set forth in the SSA's Program Operations Manual System ("POMS"). This method assumes that each member of a household shares equally in the funds used for support. *Id.* at 665-66. At the same time, both the ALJ and the Appeals Council relied on Section (E)(4)(c) of the policy of the Office of Retirement and Survivors Insurance ("ORSI Policy"), which provides that "[f]or each member of the household whose income exceeds the cost of support . . ., the cost of support is subtracted from his/her income. The balance is the amount available for

4

that individual's support of other household members." *Id.* at 666 (quoting ORSI Policy Section (E)(4)(c)). The court found that "subtracting the entire cost for the wage-earner's support is inconsistent with the original assumption upon which the pooled-fund method rests: that all family members share *equally* in the funds used for support." *Id.* Neither the ALJ nor the Appeals Council, however, adequately explained this apparent inconsistency.

The court also found that the pooled-fund method may not be proper in this case because POMS RS 01301.190 cautions that this method is "based to a great extent on assumptions," and should not be applied where the one-half support requirement "is missed by a narrow margin." *Id.* at 667. The court performed several different calculations demonstrating that "depending upon how certain variables are input into the relevant calculation, the pooled-fund method may result in a grant or denial of benefits, as well as a determination that the pooled method does not apply at all because the half-support margin is too narrow." *Id.* In light of these unresolved issues, the court remanded the case for further explanation, and instructed the ALJ to consider "at least the following matters":

> (1) the appropriate calculation method used to determine eligibility, and the manner in which the calculation is done; (2) the potential inconsistency between the POMS pooled fund method and the ORSI Policy with respect to the deduction of a wage earner's full cost of support from available income to support other family members; (3) the proper characterization of child support payments from Mr. Ginsberg for Mitchell; and (4) if the percentage for half-support misses the 50 percent mark, what constitutes a "narrow margin" under the policy, whether the shortfall is within that narrow margin, and if so, whether the pooled income method should apply.

*Id.* at 670.

### E. The New Findings of the Appeals Council

On remand, the Appeals Council determined that a further hearing before an ALJ was unnecessary, and retained jurisdiction to decide the matter. (R. 133-34.) On August 8, 2006, the Appeals Council issued its decision once again denying Plaintiff's claim for benefits on behalf of her son, Mitchell. (R. 102-05.) The Appeals Council first held that the child support payments from Mr. Ginsberg were properly characterized as income to Mitchell, explaining that "[i]t was ordered by the court . . . because of the existence of a parent-child relationship between Mr. Ginsberg and Mitchell and the resultant obligation of Mr. Ginsberg to support him." (R. 103.) The Appeals Council found it significant that the child support was paid for Mitchell's "support and maintenance," and that the payments went to the mother on Mitchell's behalf only because he is a minor. (*Id.*)

The Appeals Council next considered the applicability of the pooled-fund method, noting that it is premised on the assumption that "all income coming into the household is used to support its members and that the support needs of the household are totally satisfied by that income." (*Id.*) In the Appeals Council's view, pooling of income "is used to determine the cost of the shared support of each member of the household, i.e., the pro rata cost of the shared income." (*Id.*) This method does not, however, "dictate the distribution of the income or the extent of the distribution of that income to any particular individual." (*Id.*) According to the Appeals Council, such a distinction is consistent with 20 C.F.R. § 404.366(b), which states that the SSA will consider any income that is available to the child for his support regardless of whether that income is actually used for his support. (R. 103-04.) It is also consistent with Social Security Ruling ("SSR") 85-1, which states that the amount of a child's own income, whether or not actually used for his support, "must be considered <u>first</u> compared to the cost of one-half of his shared support." (R. 104 (emphasis in original).)

The Appeals Council explained further that "[t]he insured person's discrete income and not his share of the pooled household income is considered in determining whether his own income

6

is sufficient to provide at least one-half support to the applicant, looking at whether the applicant needs the insured to provide such support, given his own income." (*Id.*) The Appeals Council also stated that "there is no basis not to require the insured's discrete income to be considered first for his own support as is treated the income received by the applicant because, as a practical matter, the question is whether the insured has enough income to be able to make regular contributions of at least one-half of another's support. In order to determine whether the insured has enough income, the cost of his own shared support must be considered." (*Id.*)

Based on these principles, the Appeals Council found that the family's household income was $31,380.76 (Mr. Rhodes's income in the amount of $26,884.36 plus child support payments from Mr. Ginsberg in the amount of $4,496.40). The shared cost of each family member's support was $7,845.19 ($31,380.76 ÷ 4 family members), and one-half of that amount was $3,922.59. Mitchell's income from child support payments ($4,496.40) was more than the cost of one-half of his support ($3,922.59), so Mr. Rhodes did not provide one-half of Mitchell's support. (*Id.*) The Appeals Council explained that this difference of $573.81[2] ($4,496.40 - $3,922.59) was not a "narrow margin," noting that it represented 12.76 percent of Mitchell's own income; 14.63 percent of the cost of one-half of his support; and 7.3 percent of the cost of each family member's support. (*Id.*) Thus, the Appeals Council found it appropriate to use the pooled-fund method, and held that Mr. Rhodes was not providing Mitchell with at least one-half of his support at the time of death. (*Id.*)

---

[2] The Appeals Council provided a figure of $573.99, but this appears to be an error. The resulting difference of 18 cents, however, is not material to the outcome of this case.

**F.     The Second Appeal**

Plaintiff once again appeals the Appeals Council's decision to this court pursuant to 42 U.S.C. § 405(g). She argues that the Appeals Council failed to comply with Judge Schenkier's order on remand, and that she is now entitled to an award of benefits on behalf of Mitchell without further review.

## DISCUSSION

**I.     Standard of Review**

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Social Security Act. *See* 42 U.S.C. § 405(g). In reviewing this decision, the court may not decide facts anew, reweigh evidence, or substitute its own judgment for that of the Appeals Council. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). The court's task is limited to determining whether the Appeals Council's final determination is supported by substantial evidence and based on the proper legal standards. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004).

Although this court accords great deference to the Appeals Council's determination, it must do more than merely rubber stamp that decision. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (internal citations omitted). The court must critically review the decision to ensure that there is an "accurate and logical bridge from the evidence to [the] conclusion." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## II.     Analysis

Plaintiff argues that the Appeals Council's decision must be reversed because it fails to address all of the issues raised in Judge Schenkier's opinion, and violates the law of the case doctrine.  The court disagrees.

Plaintiff first argues strenuously that the Appeals Council failed to adhere to Judge Schenkier's directions by relying on SSR 85-1 to determine Mitchell's eligibility for benefits.  (Pl. Mem., at 9.)[3]  This is not accurate.  The Appeals Council relied on the pooled-fund method set forth in POMS to determine that one-half of Mitchell's support amounted to $3,922.59, which is less than the $4,496.40 Mitchell received from his biological father as child support.  (R. 103-04.)  The Appeals Council did refer to SSR 85-1, but only as further support for its finding that an applicant's own income, whether or not actually used for the applicant's support, must be considered first compared to the cost of one-half of his shared support.  (R. 104.)

Plaintiff also objects that the Appeals Council did not explain why it ignored the reconsideration determination that included $19,600 in loans as part of the family's income.  (Pl. Mem., at 10.)  The Commissioner responds that all previous administrative decisions have been vacated and are not subject to judicial review.  (Def. Mem., at 8-9.)[4]  The court agrees that inclusion of the loan amount was not required as the law of the case.  The law of the case doctrine "requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998).  Here, Judge Schenkier questioned whether the one-time loan "even should be considered as income to the Lody-Rhodes family (since it was fully

---

[3]     Plaintiff's Motion to Reverse the Final Decision of the Commissioner of Social Security is cited as "Pl. Mem., at __."

[4]     Defendant's Memorandum in Support of Summary Judgment is cited as "Def. Mem., at __."

repaid during the 12-month period relevant for determining eligibility)," and observed that this was an issue "for the ALJ to reconsider on remand." *Lody-Rhodes*, 343 F. Supp. 2d at 670.

Plaintiff is correct that the Appeals Council did not explain the decision to exclude the loan from its calculations, but by doing so, the Appeals Council made clear its position that, as suggested by Judge Schenkier, the one-time loan was not fairly characterized as income. *See McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004) (quoting *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)) (Appeals Council "need not address every single piece of evidence" in its decision, but must build an "accurate and logical bridge between the evidence and [its] findings.") Notably, the SSA's April 14, 2001 reconsideration determination did not affirmatively state that the loan should be included as income. Rather, the SSA observed that "[y]our [Plaintiff's] calculation added $19,600.00 for a total of $50,980.76 for the household," and "[u]sing your computation," Mitchell did not receive one-half of his support from Mr. Rhodes. (R. 91.) In addition, the social security regulations provide that, at least for purposes of Supplemental Security Income, proceeds of a loan are not considered income to the borrower. 20 C.F.R. § 416.1103(f). Thus, the decision is supported by substantial evidence "sufficient to convince a reasonable person that the [Appeals Council's] findings are adequate." *McKinnie*, 368 F.3d at 910.

Contrary to Plaintiff's next assertion, the Appeals Council did reconcile the POMS pooled-fund method and the ORSI Policy of subtracting a family member's cost of support from his own income, as ordered by Judge Schenkier. The Appeals Council explained that the pooled-fund method "is used to determine the cost of the shared support of each member of the household, i.e., the pro rata cost of the shared income." (R. 103.) The Appeals Council also clarified that this method "does not dictate the distribution of the income or the extent of the distribution of that income to any particular individual." (*Id.*) According to the Appeals Council, "there is no basis not to require the insured's discrete income to be considered first for his own support . . . because, as a practical matter, the question is whether the insured has enough income to be able to make

10

regular contributions of at least one-half of another's support. In order to determine whether the insured has enough income, the cost of his own shared support must be considered." (*Id.*) In other words, it is possible to utilize the pooled-fund method to determine the amount of each family member's cost of support, and still rely on the ORSI Policy to determine whether an insured has enough income to make regular contributions of at least one-half of a stepchild's support. (ORSI Policy Section (E)(4)(c)).

As noted, the Appeals Council based its decision on a total family income of $31,380.76 ($26,884.36 in income from Mr. Rhodes + $4,496.40 in child support from Mr. Ginsberg). Under this scenario, the cost of each family member's support was $7,845.19 ($31,380.76 ÷ 4 family members), and one-half of that amount was $3,922.59. No further calculation was necessary to conclude that Mr. Ginsberg was paying more than that amount ($4,496.40) for Mitchell's support, regardless of what Mr. Rhodes contributed. Thus, there was no need to address the ORSI Policy in this circumstance.

Plaintiff insists that the case should nonetheless be reversed because the Appeals Council failed to analyze all of the calculations set forth in Judge Schenkier's opinion. (Pl. Mem., at 11-12.) Citing the law of the case doctrine, Plaintiff argues that the Appeals Council was not "free to ignore the necessary implications of the several different methods of calculation adduced by Judge Schenkier in his attempt to show the inconsistency of the Agency's policy with regard to calculations of stepchild benefits." (*Id.* at 12.) *See also Wilder*, 153 F.3d at 803. The court agrees with the Commissioner, however, that the Appeals Council was not required to address each of Judge Schenkier's calculations in order to comply with his order. (Def. Mem., at 10.) To the contrary, the opinion makes clear that those calculations were merely illustrative in nature. *See Lody-Rhodes*, 343 F. Supp. 2d at 667 ("To illustrate this point, we begin by using the information of record to perform a calculation . . . .") At the conclusion of his opinion, Judge Schenkier identified four issues that the Appeals Council needed to address, none of which mentioned any specific calculation. The

Appeals Council did address the four stated issues and, thus, complied with the court's order. *Id.* at 670.

Plaintiff next argues that the Appeals Council erred in characterizing the child support payments from Mr. Ginsberg as income to Mitchell. In Plaintiff's view, "[c]hild-support matters in this case are governed by the law of the State of Illinois," and the Appeals Council "has made no attempt to substantiate its conclusions with citation to Illinois statutory or case law that would support the conclusion." (Pl. Mem., at 11.) Plaintiff has offered no support for this assertion, and the social security regulations expressly instruct that, in determining whether an insured person is providing one-half of a child's support, the SSA must consider "any income (from sources other than the insured person) [that the child has] available for support purposes." 20 C.F.R. § 404.366(b). The $4,496.40 in child support payments from Mr. Ginsberg certainly constitutes income from another source that is available for Mitchell's support. Thus, the Appeals Council's characterization of the child support payments as income to Mitchell is supported by substantial evidence and based on proper legal standards. *Briscoe ex rel. Taylor*, 425 F.3d at 351.

Plaintiff finally objects that the Appeals Council failed to explain why Mitchell missed the one-half support criterion by more than a "narrow margin." (Pl. Mem., at 11.) As noted, POMS RS 01301.190 cautions that if one-half support is missed by a narrow margin, the pooled-fund method should not be used. Mitchell's own income of $4,496.40 in child support payments exceeded the cost of one-half of his support ($3,922.59) by $573.81. This constitutes 12.76 percent of Mitchell's own income, 14.63 percent of the cost of one-half support, and 7.3 percent of the cost of each family member's support. (R. 104.) In other words, Mr. Ginsberg not only provided 100 percent of the cost of one-half of Mitchell's support, but also an additional amount equal to 14.63 percent of the remaining half of his support. Neither party has cited, nor has the court found any cases or administrative decisions addressing what constitutes a "narrow margin" in this context. In the absence of any such guidance, and given the percentages at issue here, the court defers to the

12

Appeals Council in finding that it reasonably concluded that Mr. Rhodes's support missed the one-half standard by more than a "narrow margin." *See Spaulding v. Barnhart*, No. 05 C 6311, 2007 WL 1610445, at *5 (N.D. Ill. Mar. 2, 2007) (a final decision of the Appeals Council "deserves substantial deference.") Notably, Plaintiff herself contends that "the POMS' pooled-fund method of calculation should apply," indicating that she agrees that Mitchell did not miss the one-half standard by a "narrow margin." (Pl. Reply, at 2.)[5]

## CONCLUSION

For the reasons stated above, the Commissioner's motion for summary judgment [Doc. 25] is granted, and Plaintiff's motion for summary judgment [Doc. 21] is denied. The Clerk is directed to enter judgment in favor of the defendant.

ENTER:

Dated: October 2, 2007

_Nan R. Nolan_
_____
NAN R. NOLAN
United States Magistrate Judge

---

[5] Plaintiff's Reply to Defendant's Memorandum in Support of Summary Judgment is cited as "Pl. Reply, at __."